UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK RENEE GATES,<br>Petitioner,<br>v.<br>ROBERT NEUSCHNID,<br>Respondent. | Case No. 19-cv-07780-PJH<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and lodged exhibits with the court and petitioner filed a traverse. For the reasons set out below, the petition is denied.

## BACKGROUND

A jury found petitioner guilty of six felonies and a misdemeanor as a result of four different incidents of domestic violence. *People v. Gates*, No. A145821, 2018 WL 1179821, at *1 (Cal. Ct. App. March 7, 2018). Petitioner was sentenced to 13 years in prison. *Id.* at 2. The California Court of Appeal affirmed the conviction. *Id.* at 1. A petition to the California Supreme Court was denied on May 16, 2018. Answer Ex. H.

Petitioner filed a series of state habeas petitions that raised the same claims as those raised in this federal petition. These included a habeas petition in the San Mateo County Superior Court, denied on November 14, 2018, in a reasoned decision, Docket No. 3 at 40-41; a petition filed in the California Court of Appeal, denied on April 10, 2019, in a reasoned decision, *Id.* at 42; and a petition to the California Supreme Court, summarily denied on July 24, 2019, without comment or citation, *Id.* at 44.

**STATEMENT OF FACTS**

The California Court of Appeal set forth the relevant facts:

> L.S. testified at trial that she began dating Gates in April 2013, and that three violent incidents occurred at her home later that year. In October 2013, the couple got into an argument about her looking at his cellphone. As Gates went to leave following the argument, he spat in her face and then ran. She chased him. He grabbed her, put his hands around her neck, and pushed her backwards against a bannister. She ended up with a deep scratch on her chest and marks on her neck. The police were not involved.
>
> L.S. testified that in November 2013 the couple again argued about her looking at his cellphone. When L.S. inspected Gates's phone, she found women's names that upset her, and she needled him about it. As L.S. then went toward the front door to show Gates out, he took her to the floor and pushed, or smashed, the side of her head into the ground. She only broke free by pulling a picture frame off the shelf and hitting him with it, at which point he ran off. From this incident, L.S. suffered major swelling to the left side of her face, a cut lip, and a scratch beneath the nose. Again, no police were involved.
>
> L.S. testified that in late December 2013, Gates accused her of infidelity and again went after her physically. First, he punched her in the stomach. She tripped running away, then went for a kitchen knife to defend herself. Gates told her she was "not going to cut" him, then punched her hard in the face before running away. L.S. suffered a black eye, bruising on the stomach, swelling to her face, and cuts to her head, neck, and arm. Police arrived and took pictures.
>
> The fourth and final incident of violence giving rise to the charges in this case occurred in the early morning hours of January 3, 2015, when Gates and L.S. returned to her home after a jazz concert and late-night dinner with Gates's cousin and his wife. L.S. testified to the following: When Gates refused to lend L.S. his car keys, she told him to leave her home. Gates gathered up his things and put an empty Coach purse he had just given L.S. for Christmas over his arm to take it, too. L.S. attempted to grab her purse back and told her 17–year–old daughter Jae to call the police. Gates had picked up a metal bat that L.S. kept in her bedroom and thrust one end of it at L.S.'s mouth, cracking her teeth and causing her lip to bleed. Gates fled with the purse, and L.S. followed him into the street, trying to prevent him from closing his car door to drive away. Jae, who had been trying to help L.S. get her purse back, went after Gates, who then bit Jae in the back. L.S. ended up on the ground, and not long thereafter blacked out. She next remembers pain in her legs, an inability to stand unassisted, talking to the police in her home, and going to the hospital. Her head hurt for a week, and an orthopedic specialist treated her ankle for four months.

Jae testified in a manner that complemented her mother's testimony. She testified to L.S. yelling at Gates to get out of her house and struggling with Gates over the purse. Jae testified that when Gates was trying to drive away, Jae climbed into the back seat of his car, put him in a choke hold to try and restrain him, and subsequently managed to grab the bat out of the front seat. Gates bit her in the back. When Jae heard Gates say he was going to run over her mother, she hit him twice in the head with the bat. Then she got out of the car and saw that her mother's legs were pinned under the car. She yelled at Gates that he was on L.S.'s leg and needed to move forward. Eventually, Gates drove off. Jae was left with bite marks on her back and bruises on her leg and her back.

Gates testified to a different version of events. He categorically denied all the violence alleged in 2013, remembering no confrontation in October and denying any use of force against L.S. in the November or December 2013 incidents. As to the events of January 2015, Gates confirmed that L.S. told him to leave her home, but testified that L.S. and her daughter were the only ones to use violence that night. As he started to leave, L.S. pushed him into a closet door and then attacked him from behind with her metal bat as he went down the stairs. Gates showed photographs of lumps on his head, two he said caused by L.S. hitting him with the bat, and one caused by Jae also wielding the bat. Gates testified that after he got into the driver's seat of his car, L.S. started the engine and the car rolled without him touching the accelerator or the brake. When he saw that L.S. had slipped to the ground near the car, he told Jae to help her, turned the car off, and remained nearby until Jae had gotten her mother to safety. Asked whether at any time during these events he had hit L.S., Gates responded, "I never had the bat at all." To a follow-up question whether he put hands on her, Gates testified: "No. I never physically touched her at all."

At trial, Gates faced four criminal charges for the events of January 3, 2015, followed by three for the three incidents in 2013. Count 1 alleged first degree robbery, with enhancements for use of two deadly weapons (a bat and a vehicle) and for inflicting great bodily injury in an act of domestic violence. (§§ 212.5, subd. (a); 12022, subd. (b)(1); 12022.7, subd. (e).) Count 2 alleged felony domestic violence, with enhancements for use of a deadly weapon (a bat) and for inflicting great bodily injury in an act of domestic violence. (§§ 273.5, subd. (a), 12022, subd. (b)(1); 12022.7, subd. (e).) Count 3 was identical to count 2 except that the alleged deadly weapon was a vehicle, rather than a bat. Count 4 alleged misdemeanor cruelty to a child, specifically Jae. (§ 273A, subd. (b).) And counts 5 through 7 each alleged felony domestic violence without enhancements, for the events of December, November, and October 2013, respectively. (§ 273.5, subd. (a).) On June 4, 2015, the jury convicted Gates on all counts and found all enhancements to be true.

3

> On July 24, 2015, Gates was sentenced to 13 years in prison. The trial court selected as the principle term count 3, with its enhancement for using his car as a deadly weapon. Gates received nine years on this count, including enhancements. For counts 2, 5, 6, and 7, the court imposed one year consecutive per count, bringing the total to 13 years. For the misdemeanor, Gates was sentenced to time already served, and for the robbery in count 1 the court imposed but stayed, pursuant to section 654, an eight-year sentence.

*Gates*, 2018 WL 1179821, at *1-2.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the

1    application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

2    Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

3    determination will not be overturned on factual grounds unless objectively unreasonable

4    in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S.

5    at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

6    The state court decision to which § 2254(d) applies is the "last reasoned decision"

7    of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v.*

8    *Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion

9    from the highest state court to consider the petitioner's claims, the court looks to the last

10   reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072,

11   1079 n.2 (9th Cir. 2000).

12   As grounds for federal habeas relief, petitioner asserts that: (1) he received

13   ineffective assistance of counsel due to his attorney's failure to challenge the admissibility

14   of certain evidence; (2) the trial court erred in admitting evidence of prior bad acts and

15   California Evidence Code section 1109 is unconstitutional; and (3) false evidence was

16   introduced at trial. Amended Petition (Am. Pet.) (Docket No. 7) at 5.

**DISCUSSION**

**I.    INEFFECTIVE ASSISTANCE OF COUNSEL**

19   Petitioner first argues that trial counsel was ineffective for failing to object to the

20   admission of evidence of his prior incidents of domestic violence against the victim in this

21   case and victims in other cases. Am. Pet. at 13. The California Court of Appeal denied

22   this claim on the merits stating that the claim failed to establish a prima facie case for

23   relief. Docket No. 3 at 42.

**BACKGROUND**

25   The prosecution sought to admit evidence of petitioner's prior acts and convictions

26   for domestic violence pursuant to California Evidence Code sections 1101 and 1109.

27   Reporter's Transcript ("RT") at 32. The following discussion took place with the trial court

prior to trial[1]:

> THE COURT: Returning to the 1109 motion, which is motion No. 4, I am very familiar with 1109 of the Evidence Code. Thank you for the cite for the *Wesson* case, Ms. Lee. That was informative. And I am also mindful that any admission of evidence under 1109 has to be weighed against Evidence Code section 352.
>
> So with that, so that the record is clear, the People are seeking to admit not for purposes of impeachment but under two separate provisions of the Evidence Code. One is 1109, which to summarize in layman's terms, allows for essentially what would otherwise be considered propensity evidence in the form of prior acts of domestic violence in a present prosecution where domestic violence charges are alleged.
>
> 1101(b) is a separate provision which has a completely different analysis, and that would allow for prior conduct to demonstrate something other than propensity. And what the People are seeing under 1101(b) is to show that the defendant had a motive to commit the offenses charged herein or absence of mistake or accident.
>
> So I understand the People's position, the incidents that the People are seeking include a 243(e) misdemeanor conviction from 1994 in Santa Clara County not involving the complaining witness, a 273.5 misdemeanor conviction from 1995 out of Santa Clara County not involving the present complaining witness, a 422 misdemeanor conviction and a 594 misdemeanor conviction out of Hayward in 2001, a 273.5 felony conviction out of Santa Clara County from 2004, a 273.5 conviction from 2005 out of Tracy as well as conduct which did not necessarily result in convictions from April of 2002, an incident in Hayward involving Rashanda Ames, a 2003 incident from Tracy involving Andrea Frazier, a 2006 Newark incident involving Brenda Williams, none of whom which are the same - - oh, and another incident which is pending in Newark involving Brenda Williams.
>
> I have already indicated that I would not allow that incident to be utilized in this trial under either theory. The fact that that is a pending case, I'm not going to allow admissibility of that evidence because it leaves a defendant in the untenable position of having to weigh the cost and benefits of continuing his protection under the Fifth Amendment of the United States Constitution not to be forced or compelled to testify and on the other hand, having to defend against those allegations which are not the allegations which establish the criminal charges here. So that is not a case that I would allow the prosecution to use under either 1109 or 1101.

---

[1] The prosecutor was Ms. Lee, and petitioner's trial counsel was Mr. Armstrong. RT at 3, 34.

I think allowing evidence of all these incidents certainly would create substantial prejudice which outweighs their probative value. So on the other hand, I think under 1109, there is very little question that some of this evidence should be deemed admissible. So it's a question of striking a balance. And if you want to make additional arguments under 1101, certainly I encourage you to do that and to be specific, Ms. Lee. There are separate jury instructions for this type of evidence and its admissibility, I believe, and so we have to be very careful about under what theory this evidence is being admitted.

So why don't you focus on those offenses that you think are most probative, Ms. Lee. Because I'm not going to allow all of them but I'm going to allow some of them.

I'll first hear from Ms. Lee and then I'll hear from Mr. Armstrong.

[Prosecutor:] First, with regards to 1109, my first request would be to allow the five convictions for which the defendant has actually been convicted. I think the position that I have is supported by the *Wessen* case, which I had emailed the court and counsel the cite to, that a lot of any concerns of any inflammatory nature -- excuse me, inflammatory details going before the jury would be minimized by the fact that I could prove these using certified records and/or potentially stipulations which may even more diminish any threat of undue prejudice.

So my first request would be for the court to allow those five priors to come in. I recognize that some of these exceed the ten-year presumption that 1101 provides that within ten years there is a presumption.

THE COURT: You said 1101. You mean 1109.

[Prosecutor:] Yes, Your Honor. Thank you. Under 1109, there is a presumption that any such conduct -- and it doesn't even have to be a conviction. Any such conduct is and should be admissible. However, what I would point out to the court is the fact that the defendant has essentially ongoing contacts with law enforcement, and since 1990, I believe there was not a time or a year where he was either on probation or facing new criminal charges in court.

Also, with the court has before it in considering these convictions are also other uncharged offenses before it to consider the fact that there really was a frequency with which the defendant was coming into the law enforcement system, into the judicial system circumstances involving domestic violence. So although some of these convictions exceed the 10 years because of how the defendant has picked up convictions and has had other instances involving domestic violence, within the years in between, I would ask the court to consider the very probative value of even the older convictions which precisely fit what 1109 was intended to do, which was to allow the jury to consider propensity evidence because of the

7

concerning nature of domestic violence.

In our case here, the victim in fact did suffer prior -- or its alleged did suffer prior incidents of domestic violence before this final incident in January, and some of the prior reports or prior instances she did not report to the police. In a circumstance like this where there is a victim who has been reluctant to break free of the cycle of violence and free herself from the relationship of an abuser, I think propensity evidence is even more relevant for the jury to consider.

With regards to using any of this evidence as 1101, Your Honor, to be quite frank with the court, at this time I'm not sure if I am able to secure the civilian witnesses necessary to prove the instances for 1101. However, I am asking -- for 1101 purposes. However, I am asking for the court to –

THE COURT: So you don't have subpoenas served on Brenda Williams or Andrea Frazier?

Prosecutor: Not at this time, Your Honor.
So I would ask the court to reserve ruling on that. If my circumstances change, perhaps I can alert the court and counsel.

THE COURT: Mr. Armstrong?

[Defense Counsel:] I would indicate a couple of things, Your Honor, please. First of all, it's my understanding from the timeline that Ms. Lee provided to us late yesterday by email that there is only one domestic violence related case in the last 10 years, and that's the 52305, [sic] 273.5, where we don't know anything else about the case, apparently, from the rap sheet.

In addition, under 1109, I don't know that Ms. Lee is correct when she talks about the 10 years being a presumption. I read it a little more definitively than that precluding things from more than 10 years ago.

THE COURT: It's 1109 subsection E. "Evidence of acts occurring more than 10 years before the charged offense is inadmissible unless the court determines that the admission of this evidence is in the interest of justice." So it's actually a presumption against admissibility.

[Defense Counsel:] Right. Okay. It seems to me that I guess some of this may be moot if there is no witness to testify, but it is still is my belief that although the court has discretion, anything more than 10 years certainly under 1109 should be kept out. Even under 1101, in the circumstances since it's been 10 years since there is any domestic violence related anything, except for the counts that are now alleged at the end of the investigation which were just testified to at the prelim by the witness in the initial counts, there has been nothing in his history to indicate that he has been in regular conduct with the criminal justice system except driving offences. For those

8

> reasons, if we're reaching past 10 years, although 1101 doesn't specifically prohibit them, I would ask the court to exercise its discretion to exclude those for these purposes.
>
> THE COURT: I am going to allow the People to use the fourth and fifth convictions set forth on page 3 under 1109. I note that three of the offenses charged in the present information are incidents that occurred in November and December of 2003. The statute speaks of – I'm sorry 2013. The statute speaks – thank you for the look. I caught that.
>
> The statute speaks of that ten-year prohibition, ten years before the charged offense. So the 2004 and the 2005 conviction, I have no qualms that they fall within what 1109 contemplates as not requiring an extraordinary finding by the court that it is in the interest of justice to overcome that presumption of in admissibility.
>
> I also find under evidence code 11352 that these prior convictions certainly have tremendous probative value, and the defendant's criminal history being what it is, it is precisely what 1109 was written to address, which is propensity evidence. I can't find a strong argument under 1101 when the offenses are so old in relation to the charged offenses here that they could establish a motive.
>
> However, I will reserve judgment under 1101. If in fact the defense presents evidence that the events which form the basis of the charged crimes herein are in any way the product of self-defense or accident or mistake, then I will reserve judgment and potentially allow the defendant to be impeached with the incidents involving -- not impeached. That's the wrong word. I'll allow the people to rebut that evidence with evidence of the January 26, 2002, Rashanda Ames incident; the October 23rd, 2003, Andrea Frazier incident; the November 2006, Newark Brenda Williams incident; as well as if the People can prove any claim made by the defendant in those first three prior convictions on page 3 where he claimed that it was either accident or self-defense, I would consider allowing the People to present that evidence in rebuttal as well.
>
> So under 1109, I am allowing the 273.5 felony conviction from November 5th, 2004, in Santa Clara; the 273.5 May 23rd, 2005, conviction out of Tracy; under 352 for 1109 purposes keeping in mind subdivision E or paragraph E, I'm not allowing convictions 1, 2 and 3 on page three. I'm not allowing any of the convictions under 1101 in the People's case in chief, but I reserve any consideration should the defense raise any issues of self-defense, accident or mistake for further consideration under 1101. Is that clear?

*Id.* at 32-40.

**LEGAL STANDARD**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

In order to prevail on a Sixth Amendment ineffectiveness of trial counsel claim, petitioner must establish two things. First, he must establish that trial counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by trial counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

**ANALYSIS**

As recounted in the facts above, the underlying charges in this case consisted of several incidents of domestic violence in 2013 and 2015. Petitioner argues that trial counsel should have objected to the admission of the 2013 incidents as propensity evidence. However, these incidents in 2013 were not admitted as propensity evidence. These incidents were part of the charges against petitioner in addition to the allegations that occurred in 2015. Clerk's Transcript ("CT") at 12-14; RT at 38. Furthermore, petitioner was found guilty of these charges that occurred in 2013. RT at 707-08. There was no basis for trial counsel to object; therefore, trial counsel was not deficient. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("failure to take a futile action can never be deficient performance").

To the extent petitioner also argues that trial counsel was ineffective for failing to object to the admission of other propensity evidence, he is not entitled to relief. He has failed to show that trial counsel was deficient or that he suffered prejudice. The record shows that trial counsel did seek to limit admission of the prior acts of domestic violence. RT at 37-38. The prosecution sought to admit approximately ten incidents from 1994 to 2006. RT at 33. The trial court only allowed in two of the incidents. RT at 40. Trial counsel was effective in challenging the admission of much of this evidence. Even assuming trial counsel was deficient, petitioner has failed meet his high burden in showing any prejudice from the admission of these two prior incidents in light of the evidence presented against him.[2]

## II.      ADMISSION OF EVIDENCE AND EVIDENCE CODE SECTION 1109

Petitioner next argues that the trial court erred in admitting evidence of his prior convictions of domestic violence pursuant to California Evidence Code section 1109, which he contends is unconstitutional. Am. Pet. at 15-19. Section 1109 of the California Evidence provides for the admission of evidence of the defendant's commission of other incidents of domestic violence if the defendant is presently accused of an offense involving domestic violence.

The California Court of Appeal found that these claims were procedurally barred because petitioner could have raised the claims on direct appeal or his prior habeas petition but failed to do so. Docket No. 3 at 42. The California Court of Appeal cited to *In re Dixon*, 41 Cal. 2d 756, 759 (1953) and *In re Clark*, 5 Cal. 4th 750, 797 (1993). *Id.*

---

[2] Petitioner also requests an evidentiary hearing on this claim. Docket No. 20 at 1-9. Petitioner's request is denied because review of claims under § 2254(d) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) (An "evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief."). Regardless, the existing record is sufficient to resolve petitioner's claim. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

**LEGAL STANDARD**

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Supreme Court precedent under § 2254(d)).

The United States Supreme Court has left open the question of whether admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006). The Ninth Circuit has held that Federal Rule of Evidence 414, which allows evidence of prior sexual offenses to show a propensity to commit the charged sexual offense in federal criminal cases, does not violate due process because the evidence is still subject to the trial court's balancing test, which provides for meaningful review. *United States v. LeMay*, 260 F.3d 1018, 1031 (9th Cir. 2001).

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). In the context of direct review by the United States Supreme Court, the "independent and adequate state ground" doctrine goes to jurisdiction; in federal habeas cases, in whatever court, it is a matter of comity and federalism. *Id.* The procedural

default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994).

In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the claimed violations of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To show cause, a petitioner must point to some objective factor external to the defense that prevented him from complying with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must show that the errors at his trial worked to his actual and substantial disadvantage, infecting his entire trial with errors of a constitutional dimension. *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989).

**ANALYSIS**

Respondent first argues that these claims are procedurally barred due to the state court's citation to *In re Dixon*, 41 Cal. 2d 756 (Cal. 1953). *In re Dixon* provides that to bring a claim in a state habeas corpus action a petitioner must first, if possible, have pursued the claims on direct appeal from his or her conviction unless the claim falls within certain exceptions. *See Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000). This is known as the "*Dixon* rule." *See id.* The *Dixon* rule is both an adequate and independent state procedural rule. *Johnson v. Lee*, 136 S.Ct. 1802, 1804-07 (2016). If a state court denies a habeas petition on *Dixon* grounds, federal habeas review is barred. *See id.* at 1804 (noting that *Dixon* is a well-established procedural bar that is adequate to bar federal habeas review). Pursuant to these legal standards and the citation to *Dixon* by the California Court of Appeal, this claim is procedurally defaulted. Furthermore, petitioner failed to present any arguments in his traverse to demonstrate cause for the default; has failed to show actual prejudice resulted from the claimed violations of federal law; and has failed to demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice. The court cannot review this claim.

Even assuming the court could review the claim, petitioner is not entitled to relief. Because there is no clearly established Supreme Court authority pertaining to the erroneous admission of irrelevant, prejudicial, or propensity evidence, the state court's decision to admit limited evidence of prior domestic violence against petitioner cannot be considered an unreasonable application of clearly established federal law.

In addition, there was no error in admitting the evidence. The Ninth Circuit has held that federal habeas relief is available only when "the admission of evidence rendered the trial so fundamentally unfair as to violate due process." *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998). Due process is violated in this respect "[o]nly if there are *no* permissible inferences the jury may draw from the evidence[.]" *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (emphasis in original).

The admission of this evidence was not arbitrary or so prejudicial that it rendered the trial fundamentally unfair. As noted in the claim above, the prosecution sought to admit approximately ten incidents from 1994 to 2006, but the trial court only allowed in two of the incidents. The trial court also carefully considered the relevant factors in deciding whether to admit the evidence in accordance with state law. Petitioner has failed to show a due process violation based on the evidentiary decision to admit the propensity evidence. For all of the reasons, this claim is denied.

Nor would petitioner be entitled to relief for his claim that California Evidence Code section 1109 is unconstitutional. Section 1109 provides for the admission of evidence of the defendant's commission of other incidents of domestic violence if the defendant is presently accused of an offense involving domestic violence.

The United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001), *overruled on other*

14

*grounds by Woodford v. Garceau*, 538 U.S. 202 (2003). In fact, the Supreme Court has expressly left open this question. *See Estelle*, 502 U.S. at 75 n. 5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). Thus, petitioner is not entitled to relief. *See Alberni*, 458 F.3d at 863-67 (denying the petitioner's claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA").

### III.  FALSE EVIDENCE

Petitioner also argues that the victim's testimony was false in violation of state law. The California Court of Appeal denied this claim, noting that petitioner failed to state a prima facie case for relief under California Penal Code section 1473. Docket No. 3 at 42.

**LEGAL STANDARD**

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted). So must a conviction obtained by the presentation of false evidence. *See United States v. Bagley*, 473 U.S. 667, 678-80 nn.8-9 (1985) ("'[A] deliberate deception of court and jury by the presentation of testimony known to be perjured' is inconsistent with 'the rudimentary demands of justice'" and a resulting conviction must be set aside "if there is any reasonable likelihood that the false testimony could have affected the jury's verdict") (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). A conviction obtained through false evidence includes not only perjured testimony, but also false documents or other forms of admissible evidence. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959).

A claim under *Napue* will succeed when (1) the testimony or evidence was actually false; (2) the prosecution knew or should have known that the testimony or evidence was

1   actually false; and (3) the false testimony or evidence was material.  *Henry v. Ryan*, 720

2   F.3d 1073, 1084 (9th Cir. 2013).  Conclusory assertions will not do.  *See id.* (finding that

3   petitioner's conclusory assertion that any testimony inconsistent with the truth must be

4   not only inaccurate but also perjured, does not constitute evidence sufficient to make out

5   a *Napue* claim).

## ANALYSIS

Petitioner is not entitled to relief for his argument that state law was violated due to the victim's allegedly false testimony.  *See Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  To the extent petitioner raises and exhausted a federal claim, he is still not entitled to relief.  In denying this claim in the state habeas petition, the San Mateo County Superior Court stated, "[p]etitioner's contention, which essentially concludes that witness testimony is false based on no more than his bald assertion that it is false, has no merit."  Docket No. 3 at 41.  The California Court of Appeal similarly noted that petitioner, "fails to allege facts establishing that the testimony at issue was false, let alone material to the jury's verdict."  *Id.* at 42.

Petitioner raises in this petition the same conclusory assertions that are insufficient to meet his burden under *Napue*.  *See Henry*, 720 F.3d at 1084.  He has failed to demonstrate that the victim's testimony was actually false, that the prosecution knew or should have known that the testimony was actually false, and that the false testimony was material.  This claim is denied.

## APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in the ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the

constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard. Here, the court finds that no claims in this petition meet the above standard and accordingly DENIES the COA. *See generally Miller-El*, 537 U.S. at 327.

## CONCLUSION

1. The petition for writ of habeas corpus is **DENIED** on the merits. A certificate of appealability is **DENIED**. *See* Rule11(a) of the Rules Governing Section 2254 Cases.

2. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 9, 2021

                                               */s/ Phyllis J. Hamilton*
                                               PHYLLIS J. HAMILTON
                                               United States District Judge